STATE *Ex Rel.* C. W. SMITH, *et al.*

*v.*

GEORGE W. PRIDE, *Mayor, Etc., et al.*

(No. 10169)

Submitted May 24, 1949. Decided May 27, 1949.

LOVINS, JUDGE, dissenting.

*W. J. Thompson, John T. Keenan,* for petitioners.

*Martin C. Bowles,* for defendants.

KENNA, JUDGE:

This mandamus proceeding was instituted in this Court by the State of West Virginia at the relation of C. W. Smith, Paul M. Halstead, W. B. Curry, C. P. Lewis, Rex Pruden, Harry A. White, E. L. Kinkaid, George E. Byrnside, Orville Jarrett, James P. Barton, C. D. Hopkins, C. J. Flippen, J. E. Carter and R. F. Lipscomb against George W. Pride, Mayor of the City of St. Albans, West Virginia, Gregory L. Funk, Averill Ramsey, W. L. O'Neal, Frank E. Oliver, E. H. McClintock, Estol T. Carte, Councilmen of the City of St. Albans, West Virginia, O. N. Slater, Clerk of the City of St. Albans, West Virginia, and The City of St. Albans, West Virginia, a municipal corporation, by the filing, on May 17, of their petition praying that the named respondents be required to place relators' names upon the official ballot for the municipal election in the City of St. Albans to be held on the 7th of June, 1949, as the Democratic nominees, respectively, for mayor and membership of the city council of that municipality. The petition sets out Section 21 of the charter of the City of St. Albans regularly adopted at a general election held in that city in January, 1948, after it was prepared and drafted by a charter board of seven members elected for

that purpose. A certified copy of the St. Albans charter is filed with the petition as "Petitioners' and Relators' Exhibit No. 3". Section 21 thereof reads as follows:

### "Section 21. New Parties"

"A new party may place candidate for any office upon the ballot at the general election by filing a petition therefor, signed by at least ten (10%) percent of the registered voters on the date of the last preceding regular municipal election, and containing the names of the candidates for such offices, with the Clerk at least twenty days prior to the date set for such general election, and paying the proper filing fees therefor. If any candidate of such new party for the office of Mayor receives more than ten percent of the votes cast for all candidates for his office, the new party shall be established as a qualified political party at the next municipal election. If the candidate for Mayor of any party fails to poll more than ten percent of the votes cast for all candidates for that office at any general election, such party shall be dropped from the ballot at the next municipal election, unless placed on the ballot by petition as a new party."

Relators' petition alleges that a petition of nomination duly signed by at least ten per cent of all of the registered voters as required by Section 21 of the city charter was filed with C. N. Slater, Clerk of the City of St. Albans, on April 28, 1949, more than twenty days prior to the city election, and that each of the relators is and was properly qualified to occupy the office for which the nominating petition sought to nominate him, but that on May 13, 1949, the Common Council of the City of St. Albans adopted a resolution declining to place the names of the relators upon the ballot to be used in the city election to be held June 7, 1949, because said petitioners did not comply with the laws of the State of West Virginia and the sections of the charter of the City of St. Albans relating to elections. The position of the relators is that they have fully complied with Section 21 of the charter and therefore that

the refusal of the common council to place their names upon the ballot is the refusal to perform a ministerial duty that entitles them to a peremptory writ requiring that duty to be carried out.

The respondents in their answer allege that Section 19 of the charter of the City of St. Albans provides: "elections shall be conducted under the statutes of the State of West Virginia. * * *." and that that provision of the charter is in compliance with Code, 8A-3-7, which vests in municipalities the right of electing as to whether the laws of the State of West Virginia shall govern the conduct of their municipal elections, or whether they wish to adopt their own specific charter provisions which shall control. The respondents say that the charter of the City of St. Albans provides no machinery under which the city clerk can proceed further after the filing of the petition in his office, and that the only reason for requiring that to be done is in order to carry out the remaining provision of Section 21 to the effect that if candidates nominated by petition receive ten per cent of the votes cast at the ensuing municipal election, the party designation adopted by them shall remain a recognized party in the municipality of St. Albans, so long as it maintains that relative strength. The answer points out that in contrast to the charter of the City of St. Albans, the applicable statutes of this State (being Code, 3-4-29, 30, and the following article of the same chapter) provide in detail not only the method of nominating by petition, but also the procedure to be followed in placing the names of candidates so nominated upon the ballot.

Certain essential steps are pointed out in the answer, alleged to be supplied by the laws of the State of West Virginia, and completely lacking in the St. Albans charter, in so far as nominations by petition are concerned, including the functions of a board of ballot commissioners. The answer goes further and points out that although not expressly required in Section 21 of the charter, in undertaking to nominate candidates for the city council in the vari-

ous wards, the nominating petition does not separate its signers as being voters in the wards that the different relators seek to represent, and therefore that it does not appear that ten per cent of the voters in each of the different wards have petitioned to nominate the candidate for council in the respective wards.

The answer also alleges a chain of circumstances to support its contention that it was and is the purpose of the voters of St. Albans to erect a non partisan form of city government. The answer alleges that on April 1, 1947, a charter board for the City of St. Albans was duly and properly elected in accordance with our statutory provisions therefore, and that a draft of the St. Albans charter was submitted to the Attorney General as required by law, and that after a public hearing in November, 1947, the charter was regularly adopted by a vote of the people on January 6, 1948. The answer alleges that in that election there was submitted the alternate proposal to recognize as established parties in its municipal elections either the Democratic and Republican Parties or the Peoples Party and the Citizens Party, and that the people voted not to recognize the Democratic and Republican Parties as their recognized political parties in municipal elections, but instead the Peoples Party and the Citizens Party. The answer argues that it is certainly not the intention of the charter of the City of St. Albans to permit one of the old line parties to run candidates in their municipal election without an opportunity to do likewise to the other old line party.

We do not think there can be much doubt but that the people of the City of St. Albans intended to conduct a municipal election under the laws of the State of West Virginia in so far as applicable. Many of the smaller cities of this State lack the facilities of preparing for and conducting orderly elections. By virtue of both equipment and facilities, as well as experience, the offices of our circuit and county clerks function much better. Probably this was the underlying reason for Code, 8A-3-7, granting to municipalities coming within the home rule statute a right to

elect. It is clear to our minds that in this instance the City of St. Albans did elect to apply the law of the State. This requires the filing of the petition in the office of the circuit clerk of the circuit within which the governmental unit concerned lies. This was not done. Code, 3-4-29, provides that a nominating petition, called a certificate, shall be filed not later than the day preceding the date on which the primary election is to be held, and further, that the signers of the certificate shall not vote at the following primary. In these and in many other ways the law of the State of West Virginia safeguards the process known as "nominating by petition", ending by providing that the Secretary of State or circuit clerk, dependent upon whether the petition is county wide or extends beyond, may investigate the validity of the certificate and of the signatures, and if the investigation results in serious doubt the Secretary of State may require the Attorney General, and the circuit clerk may require the prosecuting attorney if a county unit or smaller is involved, to proceed by *quo warranto* to have the validity or invalidity of the certificate, or petition, judicially determined.

Referring again to the provisions of Code, 8A-3-7, we find that a municipality is required to "provide a method and time for nominating candidates, conducting elections, and determining and certifying results of the elections." What is within the contemplation of the Legislature, an adequate "method" to nominate by petition, we believe is quite well settled by observing the requirements imposed upon that way of nominating by the State's statutes. But comparing what the relators wish this Court to hold a just and workable method to the procedure the Legislature has prescribed as being such a method, it certainly cannot be contended that they were within the contemplation of the legislative body thought to be equally effective. However, beyond that line of reasoning and conceding for the sake of argument that in adopting their charter the people of St. Albans so intended, from the standpoint of procedure Section 21 of the St. Albans charter is a "dead-end".

There is no provision as to how the ballot will be made up, who shall finally approve it, or how the additional names will be placed thereon. Of course, if no other way were provided, the city council might "take over", but if they did without express authorization that course would lead to litigation and a disturbed state of affairs in the city's government. Certainly the Legislature did not intend that.

Section 21 of the St. Albans charter confines the right of nominating by petition to candidates of "new parties". This Court can well nigh take judicial notice that if the vernacular were strictly adhered to, the expression "new parties" does not include the Democratic and Republican Parties, which are commonly known as the "old parties". It would seem quite clear that if Section 21 had been intended to apply to both of the old line parties, that the signers of the nominating petition would have been restricted to the membership of the party upon the ticket of which it was desired to place the names of the nominees. The petitioners here desire to use the party name of the Democratic Party. They further desire their names printed on the ballot under the national emblem of the Democratic Party. The relators' petition does not allege that they are members of the Democratic Party. Neither does it allege that the nominating petition was signed by members of that party. From all that appears before us the majority— yes, the entirety—of the signers of the nominating petitions could be Republicans. Certainly neither the people of St. Albans nor the Legislature intended to adopt a procedure under which Republicans could lawfully nominate the Democratic ticket for municipal office and Democrats could place members of their party upon the Republican ballot under the Republican national emblem. This we think clearly could be the factual situation under the allegation of the relators' petiton and certainly would be the possible result of the theory upon which their case is presented. We cannot so hold.

In the light of the foregoing we are definitely of the opinion that the relators here have not shown themselves entitled to a peremptory writ of mandamus. It is perfectly clear that the charter of the City of St. Albans does contemplate and provide for nominating for elective city offices by petition filed twenty days before the regular election. We believe it is equally clear that the State statutes having to do with nomination by what is called a "certificate" are controlling and provide the only machinery available under the St. Albans charter. With those statutory provisions relators have not attempted to comply and therefore the peremptory writ of mandamus is declined and the petition dismissed.

*Writ declined;*
*petition dismissed.*

LOVINS, JUDGE, dissenting:

In my opinion, a peremptory writ of mandamus should have been awarded relators in this proceeding.

Nominations and elections of persons to public office in this jurisdiction are not a common law right. The Constitution and statutes of this State provide for and regulate such nominations and elections. 18 Am. Jur., Elections, Section 2.

This being true, we look to the legislative authority as justifying the enforcement of the right asserted thereon by the relators. It is my view that Section 21 of the Charter of the City of St. Albans sufficiently provides for the nomination of candidates for any municipal office authorized by said charter. I base my views on the fundamental and salutary principle that all organic and statutory law authorizing people to vote for their public officers should be construed and applied liberally so as to preserve the right of suffrage. I think the voters of the City of St. Albans had the right, under Section 21 of the charter of that city, to nominate any qualified persons to serve as municipal officers.

Furthermore, I do not think there is any reasonable ground for the application of Code, 3-4-29, 30; nor is Code,

8A-3-7, applicable since the Charter of the City of St. Albans, although there is a paucity of detail therein, provide an effective and complete method for the nominations of persons for offices by petition.

Under the provisions of Section 21 of the Charter of the City of St. Albans, the common council of that city could, and should, have placed the names of the relators on the ballots for the election to be held on June 7, 1949.

For the foregoing reasons I respectfully dissent.